IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**ROBERT CANO,**

    **Plaintiff,**

vs.                                                                                                  No.  06cv0783 DJS

**MICHAEL J. ASTRUE,**[1]
**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## MEMORANDUM OPINION

**THIS MATTER** is before the Court on Plaintiff's (Cano's) Motion to Reverse or Remand Administrative Agency Decision **[Doc. No. 7]**, filed December 15, 2006, and fully briefed on February 16, 2007.  On August 22, 2005, the Commissioner issued a final decision denying Cano's claim for disability insurance benefits under Titles II of the Social security Act.  Pursuant to 42 U.S.C. § 405(g), Cano seeks judicial review of the Social Security Administration's denial of his claim for benefits.  Having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, the Court finds that the motion to remand is not well taken and will be **DENIED**.

### I.  Factual and Procedural Background

Cano, forty-eight years old (D.O.B. October 14, 1959), filed his application for disability insurance benefits on February 24, 2003 (Tr. 50), alleging disability since April 28, 2000 (Tr. 50), due to prostatitis and degenerative changes of the lumbar spine.  Tr. 19.  Cano was last

---

[1] On February 1, 2007, Michael J. Astrue became the Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. Astrue is substituted for Jo Anne B. Barnhart as the defendant in this action.

insured for disability insurance benefits on December 31, 2001.  Accordingly, Cano had the burden to prove that he was totally disabled prior to December 31, 2001.  *Henrie v. United States Dep't of Health & Human* Servs., 13 F.3d 359, 360 (10th Cir. 1993)("Because Ms. Henrie's insured status expired on December 31, 1987, she must prove she was totally disabled prior to that date.").  Cano has a high school education and past relevant work as a boat mechanic, EMT/firefighter, police officer, and task force guardian.  Tr. 68.

On August 22, 2005, the Commissioner's Administrative Law Judge (ALJ) denied benefits, finding Cano was not disabled as he retained the residual functional capacity (RFC) "when his insured status expired" to "lift and carry up to ten pounds on an occasional basis; stand or walk four hours in an eight hour workday; sit for six hours out of an eight hour day if afforded a change of position between sitting and standing as frequently as every forty-five minutes."  Tr. 22 (Finding No. 6).  The ALJ further found Cano not credible.  Cano filed a Request for Review of the decision by the Appeals Council.  On June 30, 2006, the Appeals Council dismissed Cano's request for review.  Tr. 8.  Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes.  Cano seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## II.  Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards.  *Hamilton v. Secretary of Health and Human Servs.,* 961 F.2d 1495, 1497-98 (10th Cir. 1992).  Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).  "Evidence is not substantial if it is overwhelmed by other evidence in the

record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Moreover, "all of the ALJ's required findings must be supported by substantial evidence," *Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir. 1999), and all of the relevant medical evidence of record must be considered in making those findings, *see Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989). "[I]n addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). Therefore, while the Court does not reweigh the evidence or try the issues de novo, *see Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993), the Court must meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings, in order to determine if the substantiality test has been met. *See Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

### III.  Discussion

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)). The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520 (a-f). The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *Thompson*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show he is not engaged in substantial gainful employment, he has an impairment or combination of

impairments severe enough to limit his ability to do basic work activities, and his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or he is unable to perform work he had done in the past. 20 C.F.R. §§ 404.1520 and 416.920.  At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience. *Id.*

In support of his motion to reverse and remand, Cano makes the following arguments: (1) Social Security Ruling 83-20 applied in this case thus the ALJ erred in not consulting a medical advisor before determining he was not disabled prior to his date last insured of December 31, 2001; and (2) the ALJ erred in not requesting a consultative examination.

**A.  Social Security Ruling 83-20**

Under Social Security Ruling 83-20,

> The onset date of disability is the first day an individual is disabled as defined in the Act and the regulations.  Factors relevant to the determination of disability onset include the individual's allegations, the work history, and the medical evidence.  These factors are often evaluated together to arrive at the onset date.  However, **the individual's allegation or the date of work stoppage is significant in determining onset only if it is consistent with the severity of the condition(s) shown by the medical evidence**.
>
> **A title II worker cannot be found disabled under the Act unless insured status is also met at a time when the evidence establishes the presence of a disabling condition(s).** Although important to the establishment of a period of disability and to the payment of benefits, **the expiration of insured status is not itself a consideration in determining when disability began**.

SSR 83-20, 1983 WL 31249 at *1 (emphasis added).  Additionally, "a medical advisor need be called only if the medical evidence of onset is ambiguous."  *Reid v. Chater*, 71 F.3d 372, 374 (10th Cir. 1995).

Cano contends that Social Security Ruling 83-20 applies to this case. In support of this contention, Cano cites to the ALJ's decision stating:

> The ALJ admitted and recognized in making her decision that this case involved an issue of onset with respect to whether the claimant was disabled prior to his DLI (date last insured) of December 31, 2001, explicitly stating **"the relevant period under consideration is from April 28, 200 through December 31, 2001",** and expressly noting that **"Mr. Cano's condition during the relevant period is at issue."** The ALJ further recognized and stated that, **"Mr. Cano's hearing was held three years and four months after his disability insured status expired."**

Pl.'s Mem. in Support of Mot. to Reverse or Remand at 6. Cano misconstrues the ALJ's statements. The ALJ stated:

> The claimant meets the nondisability requirements set forth in Section 216(i) of the Social Security Act and is insured for disability benefits through December 31, 2001. Therefore, the claimant must establish disability on or prior to this date. As no good cause exists to reopen his prior application, the relevant period under consideration is from April 28, 2000 through December 31, 2001. Mr. Cano's condition during the relevant period is at issue.

Tr. 18. This language in the ALJ's decision does not support Cano's assertion that "the ALJ admitted and recognized that this case involved an issue of onset with respect to whether the claimant was disabled prior to his DLI of December 31, 2001." Rather, the ALJ noted the relevant inquiry in this case was whether Cano had a disabling impairment during the relevant period at issue, which was from April 28, 2000 through December 31, 2001.

As previously noted, Social Security Ruling 83-20 makes clear that "[a]lthough important to the establishment of a period of disability and to the payment of benefits, the expiration of insured status is not itself a consideration in determining when disability first began." SSR 83-20, 1983 WL 31249 at *1. In this case, Cano had previously filed an application for disability benefits which was denied on April 27, 2000.[2]  Tr. 17. Thus, the ALJ

---

[2] The ALJ issued his decision on April 27, 2000. In Cano's June 1, 1998 application for Social Security Disability Insurance benefits, Cano alleged his disability began on September 18, 1996, due to numbness in both legs, headaches, back pain, muscle spasms, and difficulty

noted that because "no good cause exist[ed] to reopen [Cano's] prior application," the relevant period the ALJ had to consider was from **April 28, 2000 through December 31, 2001**.  The ALJ considered this relevant period and found Cano was not disabled prior to December 31, 2001. Substantial evidence supports this finding.

> In her decision, the ALJ found as follows:
>
> A medically determinable impairment or combination of impairments is "severe" if it significantly limits an individual's physical or mental ability to do basic work activities (20 CFR §404.1520).  The Regulations require that if a "severe" impairment exists, all medically determinable impairments must be considered in the remaining steps of the sequential analysis (20 CFR §404.1520).  The majority of Mr. Cano's treatment history during the relevant period consists of interventions for bladder problems related to prostatitis.  This condition is considered "severe."  <u>Mr. Cano has little pathology affecting his lower back; but for the purposes of this Decision, the minimal degenerative changes affecting his lumbar spine will be considered "severe."   Mr. Cano will later be found to have cervical problems; but his symptom onset occurred subsequent to the expiration of his disability insured status. The evidence also fails to support the presence of a medically determinable "severe"  mental impairment diagnosed by a mental health specialist during the relevant period</u>.

Tr. 19 (emphasis added).   The medical record supports the ALJ's finding that "Mr. Cano ha[d] little pathology affecting his lower back . . . ."  *Id.*

On **March 21, 2002**, Cano returned to the VA with complaints of lower back pain.  Tr. 156.  Dr. Timothy Ownbey, M.D., a physician in the neurology clinic, evaluated Cano and noted "does exercise, including swimming and some relief with naproxen."  *Id.*  A review of systems was negative.  Dr. Ownbey's neurological evaluation indicated, in pertinent part, as follows:

> Motor:        5/5 strength in both upper and lower extremities with normal bulk and tone.  No palmer drift or abnormal movements noted.
> Sensation:    intact to light touch/temperature/vibration
> Coordination: Finger-nose-finger, heel to shin normal without dysmetria or ataxia.  Finger-tap and rapid alternating movements intact without dysmetria or dysdiadokinesis.  Romberg negative.

---

urinating.  *See Cano v. Barnhart*, No. CIV 02-0872 LCS, June 24, 2003 Memorandum Opinion and Order [Doc. No. 15].  The ALJ also noted in the April 27, 2000 Decision that Cano had applied for disability insurance benefits in April 1995 and in December 1997.  *Id.* fn. 1.

> Gait/station: narrow based gait and station with normal heel, toe and tandem gait.
> Reflexes: Muscle Stretch Reflexes (MSR's): 2+ triceps, 2+ biceps, 2+ brachiordialis, 2+ patellas, and 2+ ankle jerks bilaterally. Babinski negative bilaterally.
> Impression: Lumbar spondylosis with referred pain and spasm.
> Discussion: <u>Mechanical LBP without evidence of neural compression</u> that would benefit by spinal surgery. Further therapy should include PT for ROM (range of motion) and low back exercise and TENS unit and trigger point injection if his pain persists. Therapeutic massage may also be beneficial in this pt as his pain seems to be complicated by frequent spasms. Pt with hx of chronic prostate difficulties and probably not good candidate for TCA, but will begin Neurontin.
> Recommendations:
> 1. Motrin 600 mg po q6hrs prn pain (replace naproxen)
> 2. Flexeril 10 mg po qhs prn spasm
> 3. Neurontin 400 mg i po tid. Increase as tolerated to iii po tid
> 4. RTC IDS 4 months

Tr. 157-158.

On **March 28, 2002**, Cano's treating physician ordered a lumbar spine MRI and noted: "Please do study to eval[uate] possible progression of disease. Tr. 303. The physician noted the indication for the MRI as, "Low back pain. Bilateral anterior and posterior leg pain, numbness weakness diffusely. Patient also claims bowel and bladder dysfunction." *Id.* The **March 28, 2002** MRI of the lumbar spine indicated:

> FINDINGS: Vertebral bodies are normal in height, signal intensity, and alignment. The conus is unremarkable. No disc herniations. **<u>Minimal</u> disc degeneration L4-5 <u>noted</u>**. "
> IMPRESSION: **Essentially <u>normal lumbar spin</u>e for age, unchanged since previous lumbar MRI [of] 8/25/97**. The pars interaricularis is bilaterally normal, without fractures.

Tr. 217 (emphasis added). On the same day, x-rays of the lumbar spine showed "no significant degenerative changes." Tr. 303.

On **July 19, 2002**, two physicians evaluated Cano for complaints of "chronic back pain." Tr. 121-122. On that day, Cano reported he managed his pain with medications. Tr. 121. The neurological consult by Dr. Petersen, the examining physician, and Dr. Adair, the attending

7

neurologist (Tr. 123), indicated "no signs of neurologic dysfunction." Tr. 122. Specifically, Dr. Petersen noted:

> Discussion: Mr. Cano's LBP shows no signs of neurologic dysfunction. He should continue with his current therapeutic modalities in hopes of maximizing his daily functioning. We discussed the option of doubling his gabapentin (Neurontin) dose to evaluate any decrease in neuralgic symptoms and discussed the possible SEs (side effects) including sedation. Should he have SEs or no relief, he may d/c (discontinue) the gabapentin. He is amenable to this, and should this be more effective he may obtain refills through his PCP. He is welcome to return should new symptoms arise. Otherwise, he should continue to follow up with his PCP.
>
> Recommendations: Trial of gabapentin 800 mg tid. RTC if new symptoms.
>
> The attending note: nothing else to do here pending new or different symptoms. May benefit from TENS unit– PT (physical therapy) appt pending. Return to PCP.

Tr. 122-123.

The record also indicates Cano failed to keep his physical therapy appointments which tends to undermine his complaints of disabling pain. On **August 18, 2002**, Robert Garner, the physical therapist, reported:

> COMMENTS: This patient was initially scheduled in physical therapy on 6/28/02. He cancelled this appt. and rescheduled for 8/19/02 at 11:00. He no showed (sic) for this scheduled appt. this patient had two other appt.'s scheduled this date. One appt. was cancelled by clinic and the other appt. was cancelled by patient. This patient did not call to therapy to cancel his appt. Pt. also has cancelled two other appt.'s in September and is to see his PCP 9/23/02.
>
> PLAN: Will hold this consult open x 2 weeks for this patient to call back to therapy to reschedule.

Tr. 118. On **September 5, 2002**, Robert Garner followed up with this comment. "This patient was scheduled in physical therapy on 6/28/02. He canceled this appt and rescheduled for 8/19/02. He no showed (sic) for his appt and has not called back to therapy to reschedule in the past two weeks and will be discharged from this consult at this time. No treatment given." *Id.*

On **July 28, 2004**, Cano had an orthopedic consultation with Drs. Stuart Marshall and Shakeel Durrani. Tr. 358-359. Dr. Marshall noted:

> cc: low back and bilateral leg pain, left arm numbness.
>
> HPI: 44 y/o male with multiple somatic complaints about his spine and extremities. The patient was injured playing volleyball 8 years ago while in the Army. Since that time, the patient has suffered from low back pain and leg numbness. The symptoms come and go. <u>He also has left arm numbness from time to time</u>. The patient has a tens unit and uses a hot tub to help relieve the pain. He also swims and takes hydrocodone.
>
> PE: mildly antalgic gait. Patient used Canadian crutches, +heel and toe walking, normal tandem gait, straight leg raise causes low back pain only, no radicular symptoms.
> BUE (bilateral upper extremities) 5/5 trap[ezius]/delt[oideus]/bc (biceps)/tc/we/wf/int/grip
> BLE (bilateral lower extremities) 5/5 is/hs/q/ta/ehl/gs
> reflexes 2+KJ, 1+AJ, 1+BC, 0 TC bilat
> low back pain to palpation.
> <u>Negative Spurling test</u>[3]
>
> MRI lumbar spine: no herniated disks, no fractures, normal exam for age
> MRI cervical spine: **mild** central stenosis at multiple levels
> EMG: normal findings
>
> A: Lumbago and <u>mild cervical stenosis</u>
>
> P: The patient's primary complaint is low back pain and at this point there is no indication for surgical management. He should continue his tens unit and the anti-inflammatories as needed. We will discharge him to the care of his primary care MD. Discussed with Dr. Durrani.

Tr. 358 (emphasis added).

Additionally, on **December 15, 2004**, Jose L. Villarreal, M.D., an orthopedic surgeon, noted: "I counseled the patient to the extend (sic) of his findings. As far as his lumbar spine, I do not think there is much to do. **He has <u>very little pathology</u> there**." Tr. 294 (emphasis added). On that visit, Cano also reported he was drinking "about a 12 pack per day," a fact the

---

[3] Cervical radiculopathy can be diagnosed on physical examination with the Spurling Test, which narrow neural foramina via neck extension along with coupled rotation and side-bending. *American Journal of Physical Medicine & Rehabilitation*, 78(4): 381-383, July/August 1999 Stitik, Todd P. (www.amjphysmedrehab.com/pt/re/ajpmr/abstract.00002060-199907000-000).

ALJ noted in her decision (Tr. 20). Tr. 292. On that day, the physical examination revealed "**negative straight leg raising and good power**."[4] Tr. 293 (emphasis added). The physical examination also showed "full forward flexion and extension and rotation of the lower extremities." *Id.* Therefore, as late as 2004, the medical evidence does not support a finding of disability due to lumbar spine pathology. Accordingly, the Court finds that substantial evidence supports the ALJ's finding that "Mr. Cano ha[d] little pathology affecting his lower back."

The ALJ also noted in her decision that "Mr. Cano's complaints of upper extremity numbness began in a time frame which was subsequent to the expiration of his disability insured status (Exhibit 9F9)." Substantial evidence also supports this finding.

On **May 31, 2000**, Cano telephoned the VA and complained of "bilateral hand and arm tingling x2 weeks." Tr. 199. Cano was directed "to go to the er to be evaluated" since there were no appointments available with his primary care physician. *Id.* On **July 6, 2000**, Cano returned to his primary care physician at the VA for a "periodic health evaluation." Tr. 197. On that day, Cano reported his back pain was stable and he was functioning well. *Id.* Cano also reported his depression was controlled on medication. *Id.* Cano never mentioned or complained of bilateral hand and arm tingling. On **November 24, 2000**, Cano returned to the VA for a "periodic health evaluation." Tr. 184. On that day, Cano reported to Donald E. Stehr, M.D., that his back pain was stable on naproxen and that he "gets regular exercise swimming and working out in the gym." *Id.* Cano also reported his depression was controlled with medicine. *Id.*

---

[4] In her decision, the ALJ noted: "The two medical source statements submitted on his behalf in August 2003 were written twenty months after the expiration of Mr. Cano's disability insured status, which undermines their relevancy to the period under consideration." Tr. 20. The Court also notes a physician assistant submitted the **August 25, 2003** medical source statement (Tr. 231-232) and psychological source statement (Tr. 233-235). The medical source statement is not supported by Dr. Villarreal's evaluation or the medical record as a whole.

Again, Cano never complained of bilateral hand or arm tingling. On **April 5, 2001**, Cano again returned to the VA for a "periodic health evaluation." Tr. 181. Cano reported "good control of pain and no GI (gastrointestinal) side effects." *Id.* Cano also reported his depression was stable **off** medication. *Id.* Dr. Stehr directed Cano to return in six months or as needed. Once again, Cano never complained of bilateral hand or arm tingling.

Cano returned to the VA for various reasons on **May 15-16, 2001** (Tr. 180, 181), **May 29, 2001** (Tr. 178, 179), **July 19, 2001** (Tr. 177), **July 26, 2001** (Tr. 175, 176), **August 6, 2001** (Tr. 174), **September 13, 2001** (Tr. 172), **September 18, 2001** (Tr. 171, 170), **September 19, 2001** (Tr. 165-169), **September 20, 2001** (Tr. 165-166), **November 7, 2001** (Tr. 164), **November 7, 2001** (Tr. 162 "voicing no complaints" and "taking hot baths, swimming and going to gym as tolerated"), **November 29, 2001** (Tr. 161-162 fell and hurt his right shoulder), **January 17, 2002** (Tr. 161), **January 24, 2002** (Tr. 160), and **March 8, 2002** (Tr. 159 "c/o of low back pain with feeling like stickers are sticking him, has pain and numbness of both legs, c/o both lower ext[remities]"). Cano never complained of bilateral hand or arm tingling at any of these visits.

On **May 19, 2003**, Cano underwent an MRI for complaints of "waxing and waning weakness of both lower extremities and now with left arm weakness." Tr. 301. Significantly, on **August 6, 2003**, Cano had a **normal EMG**[5] of his upper extremities, bilaterally. Tr. 300. On **September 23, 2004**, Cano reported to Jose Medina, M.D., that "he continues swimming and keeping as active as possible . . . ." Tr. 354. On **September 29, 2004**, Tahseen Cheema, M.D.,

---

[5] An EMG (electromyography) measures the electrical discharges produced in muscles. A physician may recommend this test if a patient complains of weakness or numbness. *See* www.mayoclinic/health/electromyography/HQ00614.

assessed Cano with "mild cervical stenosis." Tr. 353. Dr. Cheema noted muscle strength as 5/5 in all quadrants and normal range of motion. *Id.* In addition, on **November 22, 2004**, Dr. Allen K. Moore and Dr. Shakeel Durrant evaluated Cano, noting: "45 yo male with **6-8 months hx** of left arm paresthesias. Has previous C-spine MRI that shows **mild stenosis** at multiple levels." Tr. 276 (referring to **May 19, 2003 MRI**– emphasis added); Tr. 351 (same). Dr. Moore assessed Cano with "**Mild cervical stenosis** with left upper extremity paresthesisas." Tr. 277 (emphasis added).

Dr. Moore recommended a "trial of epidural steroid injections" and referred Cano to Dr. Slonimski. *Id.* Dr. Moore directed Cano to return in **9 months** for a re-examination. Thus, as late as **November 22, 2004**, Dr. Moore assessed Cano's condition as "mild cervical stenosis." *Id.*, *see also* Tr. 279 (**December 27, 2004** physical examination: neck- full range of motion to rotation, flexion, extension and lateral; back- no pain on pressure applied along the thoraco-lumbar spine, no paraspinal muscular spasm is noted; neurological- no neurological signs of localization, tendon reflexes normal, Romberg sign is negative (used to detect poor balance), no abnormal sensation; extremities- pedal pulses and tibial posterior pulses strong at both sides, no joint deformities, good range of motion; assessment - mild spinal stenosis).

Finally, as the ALJ noted, on **February 20, 2003**, Cano reported to Jacqueline C. Addis MSPT, his physical therapist, that he swam three to four times a week up to ten laps, did his exercises and stretches,[6] and rode his stationary bike 15-45 minutes. Tr. 128. On that day, Cano reported "[h]is biggest problem is that he has tingling and numbness down B LE (bilateral lower

---

[6] Cano was on a "home exercise program" consisting of (1) hip ex-standing; (2) abduction-standing; (3) lats (latissimi dorsi) strengthening (green/blue/gray theraband); and (4) sitting posture. Tr. 129 (Jacqueline C. Addis, MSPT clinical notes).

extremities)." There was no mention of any problem with his upper extremities. Cano also reported "he got a lot of pain relief from [the TENS unit]." *Id.* Ms. Addis noted: "P: Plan to D/C (discontinue) pt from PT (physical therapy) at this time. Pt will do fine if he continues with his HEP (home exercise program) and gains strength." Tr. 129. Ms. Addis also noted Cano had met his physical therapy goals. *Id.* (met goal of improving his posture by 50%, met 100% his use of the TENS unit the last visit, and met goal of increasing lower extremity strength).

Therefore, the medical record unambiguously establishes that Cano was able to "perform a significant number of jobs in the regional and national economies" during the relevant time period as testified by the vocational expert, and therefore was not disabled at that time. Tr. 21-22. This is not a case where the "medical evidence of onset is ambiguous." *See Blea v. Barnhart*, 466 F.3d 903 (10th Cir. 2006)(where medical evidence of onset is ambiguous, and ALJ is obligated to call upon the services of a medical advisor). In this case, the evidence is not ambiguous regarding the possibility that the onset of disability may have occurred before the expiration of Cano's insured status. *See Reid,* 71 F.3d at 374*; see also Grebenick v. Chater*, 121 F.3d 1193, 1201 (8th Cir. 19970). Thus, the ALJ was not required to call a medical advisor under Social Security Ruling 83-20.

## B. Consultative Examination

Next, Cano argues the ALJ should have obtained a "consultative examination that addressed the relevant period." Pl.'s Mem. in Support of Mot. to Remand at 12. The Court disagrees.

An ALJ "has broad latitude in ordering a consultative examination." *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 778 (10th Cir.1990). Generally, only where "there is a direct conflict in the medical evidence requiring resolution or where the medical evidence in the

record is inconclusive, [is] a consultative exam ... required for proper resolution of a disability claim." *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir.1997) (citations omitted).  Cano fails to identify a direct conflict in the medical evidence, and the Court has found none.  Moreover, Cano offers no explanation on why the medical evidence is inconclusive such that the ALJ should have ordered a consultative examination.  *See Hawkins*, 113 F.3d at 1168.  Accordingly, the Court finds no error in the ALJ not ordering a consultative examination.

## C.  Conclusion

It is not this Court's role on appeal to reweigh the evidence or to substitute its judgment for that of the Commissioner.  *See Hargis v. Sullivan*, 945 F.2d 1482, 1486 (10th Cir. 1991).  The Court's role is to review the record to ensure that the ALJ's decision is supported by substantial evidence and that the law has been properly applied.  Thus, in light of the narrow scope of the Court's review, the Court is satisfied that substantial evidence supports the ALJ's finding that Cano was capable of performing a significant number of jobs in the regional and national economies during the relevant period and was therefore not disabled within the meaning of the Social Security Act prior to his date last insured of December 31, 2001.  Accordingly, the ALJ's decision is affirmed.

A judgment in accordance with this Memorandum Opinion will be entered.

_____
**DON J. SVET**
**UNITED STATES MAGISTRATE JUDGE**